**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**RICKEY WAYNE TOLBERT,
JR.,**

        **Petitioner,**

        **v.**               **CASE NO.  21-3054-JWL**

**(FNU) HUDSON, Warden,
USP-Leavenworth,**

        **Respondent.**

**MEMORANDUM AND ORDER**

This matter is a petition for writ of habeas corpus filed under 28 U.S.C. § 2241. Petitioner is incarcerated with the Federal Bureau of Prisons ("BOP") at USP-Leavenworth in Leavenworth, Kansas ("USPL").  Petitioner challenges the calculation of his federal sentence. The Court issued an Order to Show Cause (Doc. 4), Respondent filed an Answer and Return (Doc. 13), and Petitioner filed a Traverse (Doc. 14)[1].  On April 19, 2021, the Court entered an Order (Doc. 19) granting the parties an opportunity to submit supplemental briefing on a discrete issue.  Those briefs have now been filed and the matter is ready for resolution.  The Court finds that Petitioner does not allege facts establishing a federal constitutional violation and denies relief.

**I.  Facts**

Petitioner is currently incarcerated at USPL serving an aggregate 204-month federal sentence with a projected release date of April 9, 2027, via good conduct time release.  *See*

---

[1]  In addition to his Petition and Traverse, Petitioner has filed multiple exhibits, responses, supplements, and arguments (Docs. 6, 7, 10, 11, 12, 15, 17, 18, 20, 21, 24, 25, 26, 27, 28, 29, and 30) which the Court has also considered.  Petitioner has also filed a Motion to Amend Substantial Evidence (Doc. 34).  The Court grants the motion and has also considered this pleading and attached exhibit.

Doc. 13–1, Declaration of Management Analyst Michelle Hassler[2] ("Hassler decl."), ¶ 3; Exhibit A.

Petitioner received a prior juvenile sentence imposed in Texas State Case No. JD-42441-W (the "Juvenile Case"). On July 22, 1997, Petitioner committed an aggravated robbery at the age of sixteen. (Doc. 1, at 4.) On August 29, 1997, Petitioner was sentenced to probation until he reached the age of eighteen. *Id.* Petitioner violated the conditions of his probation and received a ten-year sentence imposed on February 24, 1999. Petitioner was paroled on April 23, 2002. (Doc. 13–1, at 28, 36, 63; Doc. 1, at 5.)

On May 12, 2004, Petitioner was arrested at the Dallas County Parole Office, on a parole violation in the Juvenile Case as well for Assault in Texas State Case No. MA0472473 (the "Assault Case"). *See* Hassler decl., ¶ 5; Exhibit D. Petitioner alleges that he was first taken to the Earle Cabell Federal Building to be questioned by federal agents regarding bank robberies. (Doc. 1, at 11, 25.) After questioning by the United States Marshals Service ("USMS"), a federal detainer was placed on Petitioner. *Id.* Petitioner was then released to the Dallas County Parole Office, for the parole violation and Assault Case. On May 21, 2004, Petitioner was sentenced to twelve months of probation in the Assault Case. *See* Hassler decl., ¶ 6; Exhibits E and F.

On June 25, 2004, Petitioner's parole was revoked in the Juvenile Case, requiring Petitioner to serve the remainder of his Juvenile Case sentence. *See* Hassler decl., ¶ 7; Exhibit G. The Texas Department of Criminal Justice ("TDCJ") awarded prior custody credit toward his Juvenile Case sentence, for time spent in state custody from May 12, 2004 (the date of his

---

[2] Michelle Hassler is a Management Analyst at the Designations and Sentence Computation Center ("DSCC").

arrest), until his sentence on June 25, 2004.  On August 4, 2004, Petitioner was transferred to the TDCJ for service of his Juvenile Case sentence.  *See* Hassler decl., ¶ 8; Exhibit G.

On August 24, 2004, a federal indictment for several counts of Bank Robbery and other offenses was filed in the United States District Court, Northern District of Texas. *See United States v. Tolbert*, Case No. 3:04-cr-00278-G-1 (N.D. Tex.) (Doc. 1).  On August 25, 2004, a federal arrest warrant was issued for Petitioner.  *Id*. at Doc. 2.  A *writ of habeas corpus ad prosequendum,* was issued by the federal court on September 8, 2004. *Id*. at Doc. 3.  Petitioner was taken into temporary federal custody by the USMS pursuant to this federal writ.  *See* Hassler decl., ¶ 9; Exhibits H and I.

Petitioner entered a guilty plea on November 9, 2004 and was sentenced pursuant to a superseding indictment on March 18, 2005. *See Tolbert*, Case No. 3:04-cr-00278-G-1 at Docs. 13, 25 and 26.  Petitioner was sentenced to 120 months for multiple counts of Bank Robbery, all to run concurrent to each other, and 84 months for Using, Carrying and Brandishing a Firearm During or In Relation to a Crime of Violence. *Id*. at Doc. 26.  Petitioner's federal sentencing court specifically ordered the firearms sentence to run consecutive to his multiple bank robbery sentences.  *Id*.  Petitioner was sentenced to a total of 204 months for his aggregated federal sentences.  *Id*.

On April 8, 2005, the USMS transferred Petitioner back to the TDCJ for service of his existing state sentence. *See* Hassler decl., ¶ 11; Exhibit I.  The TDCJ applied all of the time Petitioner spent in service of his Juvenile Case sentence, from June 24, 2004 (the date of his state sentence) through January 30, 2011 (the date his state sentence concluded), including his period of time in temporary federal custody pursuant to his writ.  *See* Hassler decl., ¶ 12; Exhibit K.

On August 12, 2010, Petitioner was sentenced in Bowie County, Texas's 102 District Court to a five-year term of imprisonment for Prohibited Substances in a Correctional Facility in Texas State Case No. 08F0794-102 (the "PSCF Case"). This sentence was ordered by the Texas state court to run consecutive to his current Juvenile Case sentence being served with the TDCJ. *See* Hassler decl., ¶ 13, Exhibit L.

On July 26, 2012, Petitioner satisfied the five-year sentence for his PSCF Case. *See* Hassler decl., ¶ 14; Exhibits D and M.  Petitioner remained in state custody pending resolution of his probation revocation violation in his Assault Case.  Petitioner's probation was revoked and he was sentenced to a 160-day term of imprisonment, which was deemed to have been already served. *Id.* Despite the federal detainer, Petitioner was not released to federal authorities, but rather was released from custody altogether on August 1, 2012.  *Id.*, Exhibit D.  At this time, the State of Texas relinquished primary jurisdiction over the Petitioner.  *Id.*  Petitioner was arrested on November 7, 2013, by the USMS for service of his federal sentence.  *See* Hassler decl., ¶ 15; Exhibit F.

Petitioner sought administrative relief with respect to the issues regarding the calculation of his federal sentence.  *See* Hassler decl., ¶ 4; Exhibit B.  As part of the Administrative Remedy response, the BOP sent a letter to the sentencing court on April 9, 2018 and was awaiting a response on the court's intention to run his federal sentence concurrent or consecutive to state sentences. *Id.*; Exhibit C.

The BOP considers an inmate's request for pre-sentence credit toward a federal sentence for time spent in service of a state sentence as a request for a *nunc pro tunc* (i.e., occurring now as thought it had occurred in the past) designation.  *See* Hassler decl., ¶ 18; Exhibit O.  The BOP will not allow a concurrent designation if the sentencing court has already made a determination

regarding the order of service of sentence (e.g., the federal sentencing court ordered the sentence to run consecutively to any other sentence, or custody in operation, during any time in which the inmate requests concurrent designation) or if it is not consistent with the goals of the criminal justice system.  *Id.*

The BOP considered Petitioner's request for *nunc pro tunc* designation and sought additional clarification with the April 2018 letter to Petitioner's federal sentencing court, as he had state sentences that had not yet been imposed at the time of his federal sentence.  *See* Hassler decl., ¶ 19; Exhibit C.[3]  However, the BOP did not receive a response from Petitioner's federal sentencing court in 2018.  *Id.*  The BOP additionally sent a letter on November 12, 2020, seeking the sentencing court's intention.  *See* Hassler decl., ¶ 20; Exhibit P.

On November 16, 2020, Petitioner's federal sentencing court issued an order stating in part, "The court **GRANTS** the motion for order *nunc pro tunc* and finds that Tolbert should receive a retroactive designation that the federal sentence imposed in this case shall run concurrent with Tolbert's state term."  *Tolbert*, Case No. 3:04-cr-00278-G-1 at Doc. 56.  Petitioner's federal sentencing court issued an additional clarifying order on November 17, 2020, stating in part "To clarify that order, the court intends that Tolbert's federal sentence shall run concurrently with his later imposed state sentences."  *Id*. at Doc. 58.

---

[3]  Petitioner filed a motion (Doc. 29) seeking to exclude as inadmissible Exhibit C to the Answer and Return. Exhibit C is the April 9, 2018 letter from the BOP to the sentencing court.  Petitioner argues that the sentencing court did not indicate that it received the letter.  (Doc. 29, at 1.)   The BOP sent another letter on November 12, 2020, and that is the letter the sentencing court responded to in its November 2020 orders.  Respondent has indicated that the April 2018 letter is a business record, and admissible as a record kept in the course of regularly conducted activity under Fed. R. Evid. 803(6).  (Doc. 35, at 3.)  In any event, the April 9, 2018 letter was not material to the Court's decision.  Petitioner also states that Exhibits A, D, K and part of L, should also be ruled inadmissible because they are "inaccurate and untrue" and therefore cannot be used against Petitioner in the calculation of his sentence.  *Id*. at 5.   However, the Court provided the parties with an opportunity to brief the issue of the discrepancies in the documentation.  Respondent's Supplemental Answer and Return (Doc. 23) sets forth the explanation for the dates used in calculating Petitioner's PSCF sentence.  Petitioner's motion is denied.

Petitioner's federal sentence was computed and audited.  The BOP issued a *nunc pro tunc* designation for him to serve a portion of his federal sentence concurrently with his later-imposed state sentences, at the time his sentence in the Juvenile Case expired, specifically January 30, 2011. Petitioner's federal sentence was calculated noting he had no prior custody credit towards his federal sentence, as the pretrial detention time was already credited toward his existing Juvenile Case sentence. Petitioner also had inoperable time, from August 2, 2012, through August 7, 2013 and August 10, 2013 through November 6, 2013, in which he had been erroneously released from Texas state custody and not transferred to federal custody.  Petitioner has a projected release date of April 9, 2027.  *See* Hessler decl. ¶ 23; Exhibit A.

Petitioner filed the instant Petition under § 2241, challenging the BOP's projected release date and claiming he has either overserved his federal sentence, or in the event the Court determines he is not entitled to pre-sentence jail credit, he argues he is entitled to release on May 30, 2021.  (Doc. 1, at 18, 34–35.)

## II.  Discussion

### 1.  Exhaustion

Generally, a federal prisoner must exhaust available administrative remedies before commencing a habeas corpus petition under 28 U.S.C. § 2241.  *Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (per curiam).  The BOP's four-part administrative remedy program is codified at 28 C.F.R. § 542.   Respondent acknowledges that Petitioner has exhausted his administrative remedies with respect to the issues presented in his Petition.  (Doc. 13, at 4; Doc. 13–1, at 2.)

### 2.  Standard of Review

To obtain habeas corpus relief, an inmate must demonstrate that "[h]e is in custody in

violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  In addition, although a § 2241 petitioner is not required to obtain circuit authorization before filing a subsequent § 2241 petition in federal court, "his right to have his claims heard by that court [is] limited by both the bar erected in 2244(a) and the relevant case law."  *Stanko v. Davis*, 617 F.3d 1262, 1269 (10th Cir. 2010).  Section 2244(a) provides that:

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.

28 U.S.C. § 2244(a).  Before the enactment of § 2244, "the Supreme Court developed several principles limiting the review of second or subsequent habeas petitions" and "[t]hese principles underlie the statutory bar in § 2244(a)."  *Stanko*, 617 F.3d at 1269 (citing *McCleskey v. Zant*, 499 U.S. 467, 479–88 (1991) (discussing development of principles)).

One such principle authorized a federal court to decline consideration of a habeas petition if the claim presented had previously been raised and adjudicated in an earlier habeas proceeding, "unless the court determined that hearing the claim would serve the ends of justice." *Stanko*, 617 F.3d at 1269 (noting that when Congress enacted § 2244 it codified this principle) (citing *McCleskey*, 499 U.S. at 480–82).  The "ends-of-justice" exception is limited in scope and affords relief only when there is "a colorable showing of factual innocence."  *Hall v. Daniels*, 545 F. App'x 754, 755 (10th Cir. 2013) (unpublished) (citing *McCleskey*, 499 U.S. at 495) (internal quotation marks omitted).

Another principle—abuse of the writ—authorized a court to decline a subsequent habeas petition raising a claim that could have been presented in an earlier petition but was not.  *Stanko*, 617 F.3d at 1269 (citing *McCleskey*, 499 U.S. 482–89).  The Tenth Circuit in *Stanko* found that it

is likely that Congress intended to bring § 2244(a)'s bar in line with claims historically barred as an abuse of the writ.  *Id*. at 1270.   Under the abuse of the writ doctrine, a petitioner must show that his failure to bring a claim in a previous petition "was not the result of inexcusable neglect in order to proceed on the new claim."  *Id*. (citing *McCleskey*, 499 U.S. at 489).   Standards governing procedural default determinations will govern determinations of inexcusable neglect—"the petitioner must establish cause for his failure to raise the claim in an earlier proceeding and resulting prejudice, . . . or, in the absence of cause, the petitioner must show that 'a fundamental miscarriage of justice would result from a failure to entertain the claim.'"  *Id*. at 1271 (citations omitted).

### 3.  Sentence Computation

Petitioner contends that the BOP improperly calculated his federal sentence.  Petitioner claims he should receive credit against his federal sentence for the time he spent in custody serving his Juvenile Case sentence.  Petitioner raises two arguments in support of his claim:  1) the sentence in his Juvenile Case became invalid, thus he should be credited with serving his federal sentence from the time the federal detainer was placed on him on May 12, 2004; and 2) if his Juvenile Case sentence is valid, his federal sentence should have run concurrently with it.

#### A) Invalidity of Juvenile Case

Petitioner claims that his Juvenile Case became invalid.  *Id*. at 11.  Petitioner claims that he was sentenced to three years in the Texas Youth Commission, with a possible transfer to the TDCJ (the adult prison system) "if not" paroled and released from the Texas Youth Commission by his twenty-first birthday.  (Doc. 1, at 5.)  Petitioner alleges that he was paroled after serving the three years and was released on April 23, 2002 at the age of twenty.  *Id*.  Petitioner alleges that because he reached the age of twenty-one during his seven-year parole, his Juvenile Case

sentence carried into adulthood without the case being transferred to a criminal court and without certifying him as an adult. *Id*. at 6. Petitioner then argues that the juvenile court lost jurisdiction and that this rendered his Juvenile Case a "wrongful juvenile judgment" and subjected him to double jeopardy and denied him due process. *Id*. at 6–7. Petitioner argues that any ten-year sentence based on his Juvenile Case would constitute a fundamental defect and a miscarriage of justice. *Id*. at 5. Petitioner alleges that this causes "collateral consequences" in conjunction with his federal term. *Id*. at 11.

Petitioner argues that because his Juvenile Case became invalid, his time served since the federal detainer was issued due to his arrest on May 12, 2004 for the parole violation, through the January 29, 2011 termination of the Juvenile Case sentence, should be credited to his federal sentence. *Id*. at 11–12.

Petitioner's claim that his Juvenile Case is invalid is an attack on the validity of that conviction and sentence. "A prisoner may petition under 28 U.S.C. § 2241 to attack the execution of a sentence rather than its validity." *Manni v. English*, 727 F. App'x 530, 532 (10th Cir. 2018) (unpublished) (citing *Brace v. United States*, 634 F.3d 1167, 1169 (10th Cir. 2011)); *see also Eldridge v. Oliver*, No. 15–cv–02503–GPG, 2016 WL 815354, at *2 (D. Colo. March 2, 2016) (citing *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996) ("Where the alleged errors occurred at or prior to sentencing, the appropriate remedy is § 2254 and not § 2241")).

Petitioner's request to invalidate his Juvenile Case would be untimely under 28 U.S.C. § 2244(d)(1), which provides for a one-year period of limitation. In addition, because the sentence he received has expired, he is no longer "in custody pursuant to the judgment of a State court." *Turley v. Estep*, 214 F. App'x 807, 808–09 (10th Cir. Jan. 29, 2007) (unpublished) (citing 28 U.S.C. § 2254(a); *Maleng v. Cook*, 490 U.S. 488, 492, 109 S. Ct. 1923, 104 L.Ed.2d

540 (1989) (stating a § 2254 habeas petitioner whose sentence has expired is no longer "in custody" for that conviction, even if it was used to enhance his current sentence); *see also Lackawanna County Dist. Attorney v. Coss,* 532 U.S. 394, 401, 121 S. Ct. 1567, 149 L.Ed.2d 608 (2001) ("[Petitioner] is no longer serving the sentences imposed pursuant to his [prior state] convictions, and therefore cannot bring a federal habeas petition directed solely at those convictions.")).  Petitioner argues, presumably in part to avoid the "in custody" requirement, that he is suffering collateral consequences from the sentence in his Juvenile Case.  Petitioner also alleges that his Juvenile Case was improperly relied upon by the BOP in making classification and computation decisions on his federal sentence.

The Court finds that even if Petitioner's claim regarding the validity of the conviction and sentence in his Juvenile Case could be properly brought in a § 2241 petition, it is barred by § 2244(a).  *See Bradin v. Thomas*, No. 19-3041-JWL, 2019 WL 3066424, at *4 (D. Kan. July 12, 2019), *aff'd* 823 F. App'x 648 (10th Cir. 2020) (citing decision in prior habeas case filed by petitioner where he argued that his state judgments were void, and noting that the court found that petitioner was not entitled to relief under § 2241 or § 2254).  "A Court may . . . decline to hear a habeas petition raising a claim that could have been presented in an earlier habeas petition but was not."  *Graewe v. English*, 796 F. App'x 492, 496 (10th Cir. 2019) (unpublished) (citing *Stanko*, 617 F.3d at 1269); *see also Sims v. Chester*, 446 F. App'x 128, 129 (10th Cir. 2011) (stating that "the provisions of § 2241 are subject to § 2244(a) and 'the traditional doctrines governing successive and abusive writs inform our application of that subsection's bar'") (unpublished) (citing *Stanko*, 617 F.3d at 1272).

Petitioner filed a prior petition under § 2241 in the Western District of Louisiana.  *See Tolbert v. Warden*, No. 14–CV–830, 2015 WL 110594 (W.D. La. Jan. 7, 2015).  Although his

petition in the Western District of Louisiana was filed prior to the federal sentencing court's clarification regarding concurrency, Petitioner made some of the same claims in that case that he makes in his Petition before this Court.  He challenged the computation of his federal sentence by seeking credit against his federal sentence from the date of his arrest on federal charges, May 12, 2005, to the date he was released from state custody, July 25, 2012.  *Id*. at *1.  He also sought credit for the time in which he was not incarcerated to the date the USMS arrested him, from approximately July 26, 2012, through November 6, 2013.  *Id*.

Petitioner has not put forth any argument as to why he did not raise in his prior § 2241 petition the issue of the validity of his Juvenile Case conviction and sentence or its use in making classification and calculation decisions in his federal case.   During this same timeframe, Petitioner filed a petition for writ of mandamus with the Texas Court of Appeals, which was dismissed because the court found that his attempt to obtain relief from collateral consequences of his juvenile conviction must be brought in a petition for writ of habeas corpus.  *In re Tolbert*, Case No. 05-15-00633-CV, 2015 WL 2408047, at *1 (Tex. Ct. App. May 21, 2015) (citing *In re Altschul*, 207 S.W.3d 427, 430 (Tex. App.—Waco 2006, pet. ref'd) (original proceeding)).   The Texas Court of Appeals also dismissed Petitioner's appeal of his February 24, 1999 judgment as untimely.  (Doc. 1–4, at 9–11.); *In the Interest of R.W.T.*, No. 05-15-00584-CV (Tex. Ct. App. July 30, 2015).   Petitioner raised the same claim with the state district court regarding the invalidity of the sentence and conviction in his Juvenile Case due to the failure to certify him as an adult, and his request to vacate was denied after review by the judge.  *See* Doc. 1–4, at 4–5.

Nothing suggests that the omission of this claim from Petitioner's previous § 2241 petition was the result of anything but inexcusable neglect.  *Graewe*, 796 F. App'x at 497 (citing *McCleskey v. Zant*, 499 U.S. 467, 489 (1991)).   Petitioner has not shown that a fundamental

miscarriage of justice would result from a failure to entertain the claim.  Therefore, Petitioner's claim regarding the invalidity of his Juvenile Case conviction and sentence is barred by § 2244(a) and therefore dismissed.

### B)  Calculation of Federal Sentence

#### 1) Concurrency with Juvenile Case sentence

Petitioner argues in the alternative that his federal sentence should have run concurrently with his Juvenile Case sentence.  In essence, Petitioner contends his federal sentencing court clearly intended his federal sentence to run concurrent to the sentence in his Juvenile Case.  *Id*. at 12, 17, 21–22; Exhibit 1.  He points to the transcript from his sentencing and to his interpretation of the orders from the sentencing court dated November 16 and 17, 2020.  *Id*. at 18–30. Therefore, he claims he should receive credit from the time the federal detainer was placed on him on May 12, 2004 until he completed his Juvenile Case sentence on January 29, 2011.  More specifically, he claims he should receive pre-sentence jail credit from May 12, 2004 through March 17, 2005, and then his federal term should commence on March 18, 2005 when he was sentenced on his federal case.  *Id*. at 17.

The BOP is granted authority to designate the prisoner's place of imprisonment.  The United States Attorney General, acting through the BOP, has "exclusive authority to determine when a federal sentence shall begin and where the federal sentence shall be served." *Hedding v. Garcia*, 491 F. App'x 896, 899 (10th Cir. 2012) (unpublished) (citing *Weekes v. Fleming,* 301 F.3d 1175, 1179 (10th Cir.2002); *see also* 18 U.S.C. § 3621(b)).  Section 3621(b) provides in relevant part that:

> The [BOP] shall designate the place of the prisoner's imprisonment . . ..  The [BOP] may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the [BOP], whether maintained by the

Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the [BOP] determines to be appropriate and suitable . . ..

18 U.S.C. § 3621(b).   Section 3621(b) requires the BOP to consider five factors before designating a prisoner's place of imprisonment: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence—(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28." *Id.*

But this "conferral of authority on the Bureau of Prisons . . . does not [include] authority to choose between concurrent and consecutive sentences." *Hedding*, 491 F. App'x at 899 (citing *Setser v. United States*, 566 U.S. 231, 132 S. Ct. 1463, 1470 (2012) (explaining that " § 3621(b) cannot be read to give the Bureau of Prisons exclusive authority to make the sort of decision committed to the  district court in § 3584(a)").

"[W]hen a federal sentencing court is silent on the matter, there is a statutory presumption that multiple sentences imposed at different times—even as between sentences imposed by state and federal courts—will run consecutively."  *Id.* (citing 18 U.S.C. § 3584(a) (stating that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently"); *see also United States v. Eccleston,* 521 F.3d 1249, 1254 (10th Cir. 2008)).

In this case, the sentencing court did not affirmatively order Petitioner's federal sentence to run concurrently with his state sentences.  Therefore, the BOP sent a letter to the sentencing

court in connection with determining whether to grant a retroactive designation of the state institution for service of his federal sentence.

Pursuant to Program Statement ("P.S.")[4] 5160.05, a designation of a state institution for concurrent service of a federal sentence will be made only when it is consistent with the intent of the federal sentencing court or the goals of the criminal justice system. *See* Hassler decl., ¶ 17; Exhibit O (P.S. 5160.05, *Designation of State Institution for Service of Federal Sentence*, p. 1). "Concurrent service of federal and non-federal sentences in a non-federal institution occurs when the [BOP] designates a non-federal institution for service of the federal sentence." P.S. 5160.05, at p. 4. "Ordinarily, the reason for selecting the non-federal institution is that primary custody resided with the non-federal jurisdiction and the federal sentencing court intended its sentence be served concurrently with the non-federal sentence." *Id.*

An inmate may request a *nunc pro tunc* designation. *Id.* at p. 5. The BOP considers an inmate's request for pre-sentence credit toward a federal sentence for time spent in service of a state sentence as a request for a *nunc pro tunc* designation. *Id.* "The [BOP] will not allow a concurrent designation if the sentencing court has already made a determination regarding the order of service of sentence (e.g., the federal sentencing court ordered the sentence to run consecutively to any other sentence, or custody in operation, during any time in which the inmate requests concurrent designation)" or if it would be inconsistent with the goals of the criminal justice system. *Id.* at pp. 1, 6–7.

On July 28, 2020, Petitioner filed a Motion Requesting for a Nunc Pro Tunc Judgment in his federal criminal case. *Tolbert*, No. 3:04-cr-00278-G at Doc. 51. Petitioner made the same argument in his motion that he makes in his Petition—that his Juvenile Case was invalid. He

---

[4] A Program Statement is an "internal agency guideline," which is "akin to 'an interpretive rule'" and is entitled to some deference if it is a "permissible construction of the statute." *See Reno v. Koray*, 515 U.S. 50, 60 (1995) (citations omitted).

sought a retroactive concurrent state designation as time served toward his federal sentence. Petitioner also alleged that there was an "arithmetic error at sentencing" and his 84-month sentence was a "double count". *Id*. at 9–10.   Petitioner asserted in the motion that because the 84-month portion of his federal sentence was a mistake, he should only be sentenced to 120 months, which he had fully served because his Juvenile Case was invalid. *Id*. at 13, 17–18.  He also claimed that his Juvenile Case was improperly used to enhance his federal sentence. *Id*. at 13.

On November 12, 2020, the BOP sent a letter to the sentencing court "requesting guidance as to how Mr. Tolbert's federal sentence should run with respect to sentences he has served with the State of Texas." (Doc. 13–1, at 97.)  Petitioner argues that the BOP's letter to the sentencing court was "deceitful" because it was worded as to seek clarification on whether or not his federal sentence was intended to run concurrently with his "later-imposed" state sentences. (Doc. 1–9, at 3.)   The letter provides that:

> Should the Court indicate the sentence is to run concurrently with the 5-year and 160-day state terms, the Bureau will commence the sentence in the above judgment on January 30, 2011, the date Mr. Tolbert satisfied his state parole revocation term in Case Number JD-42441-W.   This would result in his release from custody on or about April 9, 2027, while maintaining the integrity of the mandatory consecutive count under 18 U.S.C. § 924(c). Should the Court indicate the sentence is to run consecutively to the state term, he will continue to a current projected release date of October 10, 2028.

(Doc. 13–1, at 98.)  Although the letter does seek guidance on whether the sentencing court intends to run his federal sentence concurrent to the later-imposed state sentences, the letter also states that "[a]t the time the federal sentence was imposed, Mr. Tolbert was under the primary jurisdiction of state authorities in Texas" and that at the time of sentencing "he was in service of an originally imposed 10-year term of imprisonment for Aggravated Robbery based on the

revocation of his parole on June 25, 2004, in Case Number JD-42441-W." *Id*. at 97. Therefore, the sentencing court was aware of the Juvenile Case sentence and there is no reason why the court could not have indicated that it intended for Petitioner's federal sentence to run concurrently with the Juvenile Case sentence if that was the case.

In its November 16, 2020 Order, the sentencing court "GRANTS the motion for order *nunc pro tunc* and finds that Tolbert should receive a retroactive designation that the federal sentence imposed in this case shall run concurrent with Tolbert's state term." *Tolbert*, No. 3:04-cr-00278-G at Doc. 56. The next day, the court entered an order providing that:

> On November 16, 2020, the court found that the defendant Ricky Wayne Tolbert, Jr., ("Tolbert") should receive a retroactive designation that the federal sentence imposed in this case shall run concurrent with his state term. *See* docket entry 56. To clarify that order, the court intends that Tolbert's federal sentence shall run concurrently with his later imposed state sentences.

*Id*. at Doc. 58.

Petitioner argues that the sentencing court granted Petitioner's *nunc pro tunc* motion, which granted his claim that his federal sentence should run concurrently with his Juvenile Case sentence. Petitioner argues that the second "clarifying order" entered the next day was merely clarifying that his federal sentence should "also" run concurrently with his later-imposed state sentences. The BOP maintains that the clarifying order was clarifying that the federal sentence should "only" run concurrently with his later-imposed state sentences. [5]

---

[5] The parties disagree as to whether or not the sentencing court intended to include the prior Juvenile Case sentence in its retroactive designation. However, neither party disputes that Petitioner's federal sentence should run concurrently with his later-imposed sentences. Although federal sentencing courts have the discretion to order a federal sentence to run concurrent with or consecutive to an *anticipated* state sentence, in this case Petitioner had not even committed the underlying offense for his PSCF sentence at the time of his federal sentencing. *Cf. Setser*, 566 U.S. at 244–45 (finding federal sentencing court could order federal sentence to run concurrent with or consecutive to an *anticipated* state sentence) (emphasis added); *United States v. Williams*, 46 F.3d 57, 59 (10th Cir. 1995) (finding district court did not abuse its discretion in ordering defendant's sentence to run consecutive to any sentence imposed against defendant in any *pending* case) (emphasis added).

Even though the sentencing court stated that it was granting the Petitioner's *nunc pro tunc* motion, nothing suggests that the court was granting Petitioner all of the relief he requested in the motion.  Clearly the sentencing court did not declare Petitioner's Juvenile Case invalid, did not take action to correct an arithmetical error in the federal sentence, and did not find that Petitioner had already served his sentence and was entitled to be released from custody.

The sentencing court's November 16, 2020 order refers to Petitioner's federal judgment, and notes that it "is silent as to whether Tolbert's federal sentence was to run concurrently with or consecutively to any state sentence imposed on him."  *Id*. at Doc. 56, at 2.  The order goes on to note that the BOP sent a letter to the sentencing court asking "for the court's position on a retroactive designation that Tolbert's federal term imposed in this case be served concurrently or consecutively to a state term, which Tolbert completed on January 30, 2011."  *Id*.  The order then states that the letter read in pertinent part as follows:

> Should the Court indicate the sentence is to run concurrently with the 5-year and 160-day state terms, the Bureau will commence the sentence in the above judgment on January 30, 2011, the date Mr. Tolbert satisfied his state parole revocation term in Case Number JD-42441-W.  This would result in his release from custody on or about April 9, 2027, while maintaining the integrity of the mandatory consecutive count under 18 U.S.C. § 924(c).  Should the Court indicate the sentence is to run consecutively to the state term, he will continue to a current projected release date of October 10, 2028.

*Id*.  The order then states that "[t]he court **GRANTS** the motion for order *nunc pro tunc* and finds that Tolbert should receive a retroactive designation that the federal sentence imposed in this case shall run concurrent with Tolbert's state term."  *Id*.  at 3.

Admittedly, the order is somewhat confusing because it refers to the state term that was completed on January 30, 2011, which is the Juvenile Case sentence.  But it goes on to cite the BOP letter referencing the two later-imposed state sentences and states that it is the "pertinent

part" of the letter.  However, this confusion is likely what prompted the clarifying order that was entered the next day.

Petitioner subsequently sought reconsideration of the sentencing court's orders, by way of letters to the court seeking clarification of the two orders.  *See id*. at Doc. 64, *United States v. Tolbert*, No. 3:04-CR-0278(01)-G, 2021 WL 209609, at *1 (N.D. Tex. Jan. 6, 2021).  The court found that "[i]nsofar as the defendant seeks reconsideration of this court's November 2020 orders on his motion for order *nunc pro tunc*, his requests are denied."  *Id*.  The court's order states that:

> On November 16, 2020, the court granted the defendant's motion for order *nunc pro tunc* and found that the defendant should receive a retroactive designation that the federal sentence imposed in this case shall run concurrently with his later imposed state sentences.  *See* docket entry 56; *see also* docket entry 58 (clarifying order).

*Id*.  This January 6, 2021 order refers to the November orders as providing a retroactive designation that the federal sentence shall run concurrently *with his later imposed state sentences*.

A designation of a state institution for concurrent service of a federal sentence will be made only when it is consistent with the intent of the federal sentencing court or the goals of the criminal justice system.  The Court cannot find that the BOP's retroactive designation is inconsistent with the intent of the sentencing court.  The sentencing court's November 2020 orders and January 6, 2021 order denying reconsideration do not show that the sentencing court intended Petitioner's federal sentence to run concurrently with his Juvenile Case sentence.  To the extent the sentencing court expressed an intent to allow a *nunc pro tunc* designation for Petitioner's federal sentence to be served concurrently with his later-imposed sentences in his

PSCF case and probation revocation for Assault Case, the BOP's calculation is consistent with that expressed intent.

The BOP "typically enjoys broad discretion in analyzing *nunc pro tunc* requests in the first instance." *Kimbrough v. English*, Case No. 19-3160-JWL, 2020 WL 416980, at *3 (D. Kan. Jan. 27, 2020) (citing *Mangum v. Hallembaek*, 910 F.3d 770, 779 (4th Cir. 2018)). The BOP's designation is reviewed for abuse of the agency's substantial discretion under 18 U.S.C. § 3621. *Id*. (citing *Arthur v. Moorehead*, 763 F. App'x 736, 739 (10th Cir. 2019)). The BOP's decision will be affirmed unless the Court has a "'definite and firm conviction' that the BOP 'exceeded the bounds of permissible choice in the circumstances.'" *Id*. (citing *Arthur*, 763 F. App'x at 739 (quoting *United States v. Ortiz*, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986)).

The record reflects that the BOP complied with its policies and procedures which provide that the BOP will designate a state institution for concurrent service of a federal sentence "only when it is consistent with the intent of the federal sentencing court or the goals of the criminal justice system." P.S. 5160.05 at p. 4, ¶ 8. Petitioner cannot demonstrate that the BOP "exceeded the bounds of permissible choice" in refusing his request to run his federal sentence concurrently with his Juvenile Case sentence. *See Kimbrough*, 2020 WL 416980, at *4 (citing *Arthur*, 763 F. App'x at 739; *see also Rickman v. Maye*, 196 F. Supp. 3d 1197, 1199 – 2000 (D. Kan. 2016) (citing *see Heddings*, 491 F. App'x at 899 (affirming district court's denial of § 2241 petition based on BOP's refusal to grant retroactive concurrent designation; BOP properly applied statutory factors to its decision, including reliance on federal sentencing court's post-judgment statement of intent)); *Humphreys v. Warden*, 699 F. App'x 854, 860 (11th Cir. 2017) ("Given that the BOP followed its policies and procedures, and because Petitioner has not provided any

evidence to the contrary, we conclude that the BOP acted within its discretionary authority in denying Petitioner's request for retroactive designation.")).

### 2.  Start date for retroactive designation

Because Petitioner's federal sentence is deemed to be running concurrently with his two later-imposed state sentences, the operative start date for his retroactive designation is the date he began serving his PSCF sentence.  This Court entered an Order (Doc. 19) requesting further briefing from the parties limited to the issue of when Petitioner began serving his PSCF sentence. The Court's Order provided that:

> On August 12, 2010, Petitioner was sentenced in Bowie County, Texas's 102 District Court to a five (5) year term of imprisonment for Prohibited Substances in a Correctional Facility in Texas State Case No. 08F0794-102.  This sentence was ordered by the Texas state court to run consecutive to his prior sentence imposed in Texas State Case No. JD-42441-W.  The Bureau of Prisons maintains that Petitioner began service of his sentence in Case No. 08F0794-102 at the expiration of his sentence in Case No. JD-42441-W on January 30, 2011.  *See* Declaration of Management Analyst Michelle Hassler, ¶ 13 and Exhibits K, L (Doc. 13–1, at 5, 62–65, 67).
>
> Despite the language in the judgment in Case No. 08F0794-102 indicating that the sentence should run consecutively, the judgment also states that Petitioner "shall receive credit for time served" and provides for "Time Credited" from 11/20/2008 to 8/12/2010.  *Id.* at  Exhibit L (Doc. 3–1, at 67–68).  The Inmate Tracking System Commitment Data Form printouts from the Texas Department of Criminal Justice also reflect this November 20, 2008 date, and also refer to a sentence beginning date of May 10, 2009.  *Id.* at Exhibit K (Doc. 13–1, at 62–65).

Doc. 19, at 1–2.

Petitioner argues that in light of apparent inconsistency in the dates used for the PSCF sentence computation, the PSCF judgment is "erroneous" due to "incompetent performance" in executing the sentence.  *See* Doc. 27, at 10; Doc. 25, at 3.  However, Respondent addressed the issue in a Supplemental Answer and Return (Doc. 23).

Petitioner's state court ordered credit to be given to him for prior custody, from the dates of "11/20/2008 to 08/12/2010," which is 630 days.  In calculating the sentence, TDCJ added the credits back for a "start date" listed on their computation of May 10, 2009, which is 630 days back from his state sentence commencement date.  *See* Hassler supp. decl., ¶ 5; Exhibit K.  However, the BOP sought clarification on this issue, as well as other issues, by consulting with the TDCJ via e-mail on the state sentence commencement date. *Id.*; Exhibit D.  TDCJ stated that Petitioner's sentence "under cause # 08F0794-102 *began on 1-30-2011 with 630-days of presentence jail credits.*" *Id.* (emphasis added).  TDCJ also verified that January 30, 2011, was the date the sentence began as "Cause # JD-42441-W under prior TDCJ# 1247206 expired on 1-30-2011." *Id.*

The BOP used January 30, 2011 as the start date for the commencement of Petitioner's PSCF sentence after clarification from both the TDCJ and Petitioner's federal sentencing court. *See* Hassler supp. decl., ¶ 6. In its November 12, 2020 letter, the BOP inquired of Petitioner's federal sentencing court:

> Should the Court indicate the sentence is to run concurrently with the 5-year and 160-day state terms, the Bureau will commence the sentence in the above judgment on *January 30, 2011*, the date Mr. Tolbert satisfied his state parole revocation term in Case Number JD-42441-W.

*Id.* (emphasis added); Exhibit P.

As noted below, the earliest time a federal sentence can commence is the date of imposition of the federal sentence.  Respondent cites Texas law also showing that trial courts cannot "'back date' the sentence or order the sentence to commence on a date earlier than imposed to give credit for jail time." *Ex parte Hernandez*, 758 S.W.2d 594, 596 (Tex. Crim. App. 1988) (en banc). "The sentence is never dated back, but the defendant is merely given

credit from the date of confinement to the date of the sentence, or for actual jail time where applicable." *Id*.

Therefore, although Petitioner received 630 days of jail credit, his sentence in his PSCF case did not commence until he finished his sentence in the Juvenile Case—January 30, 2011. The January 30, 2011 date was the appropriate date to use for his *nunc pro tunc* designation for service of his federal sentence with the State of Texas.

### 3.  Prior time in detention and out of custody

Petitioner has also failed to show that the BOP otherwise improperly calculated his federal sentence.  The BOP, in calculating a sentence, first establishes the commencement date, governed by 18 U.S.C. § 3585(a); and second, determines credit for time already spent in custody, governed by 18 U.S.C. § 3585(b).  In accordance with statute, the BOP determines the date a federal sentence commences as the date in which "the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."  18 U.S.C. § 3585(a).  The earliest time a sentence can commence is the date of imposition of the federal sentence.  *See Isles v. Chester*, Case No. 08–3028–RDR, 2009 WL 1010553, at *4 (D. Kan. April 15, 2009) (citing *DeMartino v. Thompson*, 1997 WL 362260, at *2 (10th Cir. July 1, 1997) ("Logically,  [a federal sentence] cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served.")).

 The second step in the BOP's computation involves a determination of whether a defendant is entitled to any credit for time spent in custody prior to the commencement of the sentence.  Prior custody credit is provided for in Section 3585(b), which states:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>> (1) as a result of the offense for which the sentence was imposed; or
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
> that has not been credited against another sentence.

18 U.S.C. § 3585(b).  Program Statement 5880.28, *Sentence Computation Manual (CCCA of 1984),* and § 3585(b), preclude the application of credit for time that has been credited against another sentence. *See* Hessler decl. ¶ 22; Exhibit N.

The time Petitioner spent in detention prior to his federal sentence was credited to his state sentence.  In *Isles v. Chester*, the petitioner argued that the BOP failed to give him proper presentence credit in accordance with the sentencing judge's oral pronouncement at sentencing. *Isles v. Chester*, No. 08–3028–RDR, 2009 WL 1010553, at *3 (D. Kan. April 15, 2009).  The Court found that because petitioner received credit for the time toward his state sentence, "the BOP was statutorily precluded from granting him prior custody credit toward his federal sentence for that time." *Id*. at *4.  The Court noted that the last clause of § 3585(b) prohibits double sentencing credit.  *Id*. at *4–5 (citing *Torres v. Brooks*, 2000 WL 158963 (10th Cir. Feb. 15, 2000) (petitioner not entitled to credit for time spent in state custody prior to commencement of his federal sentence notwithstanding statement by federal sentencing judge that petitioner should be credited for those days; § 3585(b) prohibits such double credit).

Petitioner is likewise not entitled to credit for the time he was released and out of custody from August 1, 2012 to November 7, 2013.  "For the purpose of calculating credit for time-served under 18 U.S.C. § 3585, 'official detention' means imprisonment in a place of

confinement, not stipulations or conditions imposed upon a person not subject to full physical incarceration." *United States v. Woods*, 888 F.2d 653, 655 (10th Cir. 1989) (citations omitted).

Petitioner is barred from raising claims that were either raised in his prior § 2241 petition or could have been presented in the earlier habeas petition. Petitioner has failed to show that the BOP otherwise failed to properly calculate his federal sentence. Any arguments Petitioner makes regarding his entitlement to credit for time he spent in detention prior to his federal sentence or for the time he was released from custody, have already been addressed in his prior § 2241 action. *See Tolbert v. Warden*, No. 14–CV–830, 2015 WL 110594, at *2 (W.D. La. Jan. 7, 2015) (finding that Petitioner was not entitled to credit for time spent in pretrial detention before his federal sentence began or for time in which he was not in custody).

## III. Conclusion

The Court is satisfied that the BOP did not abuse its discretion in denying Petitioner's request to have his retroactive designation apply to his Juvenile Case sentence. Therefore, the Court must dismiss the Petition. Although the Court sympathizes with Petitioner's confusion, the dispositive issue is whether Petitioner has demonstrated that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner has failed to make such a showing. *See Gayton v. Romero*, 503 F. App'x 562, 564 (10th Cir. 2012) (unpublished) (petitioner failed to meet his burden of proof regarding sentence calculation); *see also Espinoza v. Sabol,* 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner.") (citations omitted); *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (the burden of proof was upon the petitioner); *Wilson v. Keffer*, Civil Action No. 08–1961, 2009 WL 1230020, at *4 (W.D. La. May 5, 2009) ("In order to state a claim for relief pursuant to 28 U.S.C. § 2241, a *habeas corpus* petitioner must allege and ultimately establish

that he is in custody in violation of the Constitution and laws of the United States; and, the habeas petitioner has the burden of proof with regard to his claims for relief.").

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner's Motion to Amend Substantial Evidence (Doc. 34) is **granted.**

**IT IS FURTHER ORDERED** that Petitioner's motion seeking to exclude exhibits (Doc. 29) is **denied.**

**IT IS FURTHER ORDERED** that the Petition for writ of habeas corpus is **dismissed and denied**.

**IT IS SO ORDERED**.

**Dated May 17, 2021, in Kansas City, Kansas.**


<u>**S/ John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**